You may proceed when you're ready. Good morning, your honors. May it please the court. This is an insurance coverage case in which the district court failed to enforce the unambiguous language of the insurance policy. American Families Homeowners Policy in this case stated, and I'm quoting here, we will not pay to repair or replace undamaged property due to mismatch between undamaged material and new material. That's what the policy said, but the district court ordered American Family to pay to replace undamaged property due to a mismatch. That was an error. This court should reverse it and remand with directions to enter a judgment for American Family. The facts are undisputed here. Both parties cross move for summary judgment. In 2015, the plaintiff's house was damaged by a storm. It was a large house with a large roof. There were 26 separate slopes on the roof. Conveniently, one for every letter of the alphabet, as the appraisal report shows. Shingles on four of those slopes were damaged. The other two had no damage at all. This is all at our addendum 55 through 57. American Family's position was it should replace the shingles on the four damaged faces, but not the 22 undamaged. The plaintiff's was it should replace the whole thing, all 26 faces of this. That was a legal dispute. American Family, it's undisputed, has paid for all of the damaged parts. It has not paid for the damaged parts. The district court ordered it to pay for the undamaged parts. The legal principles here, just like the facts, are also undisputed. The case most closely on point is the Babinski case that Judge Shepard, you authored for the panel. Applied Minnesota insurance law, and it said if the policy is unambiguous, you've got to enforce the policy. And other cases, we could cite any number of them under Minnesota law to the same effect. Where precisely did the district court err in your view in coming to the opposite conclusion? The error it made is it held there to be introduced by whether this unambiguous language that I've read actually modified the policy. The argument was that American Family clearly was trying to say it's not going to pay for a mismatch, but it didn't get the job done. Because, and this is what I expect the argument to be, is that what it needed to do was to say this new language, which was added in the Minnesota endorsement in 2013, the argument was that it had to say that it was not the Gold Star policy. That was the argument. And that argument is baseless, but let me play it out so we understand what it is. There are three steps to this policy. First, there's the base form, which is the Gold Star form. That was introduced in 94. And there's the Gold Star endorsement that was added in 99. And there's the Minnesota endorsement that was added in 2013, and that has this we won't pay for matching language. The Gold Star endorsement changed a loss value provision, a loss value determination provision in 1999. The other side's argument is that the mismatch thing was a further revision of the loss value determination provision, and therefore it was supposed to say it applied to that. That's wrong. The reason it's wrong is the loss value determination provision is condition number 11 in the Sections 1 conditions. The mismatch provision added a new section. It would be 21. It wasn't part of the loss value determination. Those were separate. It's exactly right. It never was. So that's your case. That's my case. Never was part of it. Never modified it. Didn't have to modify it. It added a brand new condition. It unambiguously says it had a brand new condition. Doesn't matter which comes first, which comes second. It's unambiguously clear. I suppose there's an abstract matter where a mismatch exclusion could be thought of as having to do with the loss value determination. But in any event, your case is that it wasn't. In this case, they were separate and distinct provisions. Yeah. It's possible that somebody could write a policy where they overlapped. This one certainly wasn't written that way. And we think conceptually it's different. What I meant was that something called loss value determination could, in fact, without contradiction, include a mismatch exclusion. But in this case, that's not the case. I agree. You could write it that way. They didn't write it this way. And conceptually, I think it's different. Loss value determination talks about how you value the part that was damaged. This is a separate thing saying we aren't going to pay for something else. It would be, pardon the expression, amalgamation would be a mismatch in a way. I see what you're saying. That's the interpretive argument. We think it's unambiguous. The district court just got that one wrong. The provision that the argument is over is this provision that has in bold matching of undamaged property. Is that right? That's correct. It's on appendix page 79. Well, right above, it's got another provision, and in bold it says duplicate payment. Under your argument, was that also an amendment to the original policy? That was added to the policy. It's an addition to the original policy language. That's right, Your Honor. There were 20 conditions in the original. This doesn't give the numbers, but this would be 21 and 22 if they were added. Just a thought, if it had 20 and 21 there, that might have helped understand what was going on. You could do more things on that, Your Honor. I don't think that there's any ambiguity in here because it says the following is added. If you look, page 3 on our reply brief marks this up and makes it really clear. Above is a provision that does amend the loss value determination provision, and that says the following is added to loss value determination. They did a good job saying where this was going, and there's no ambiguity here. Let me briefly address the other argument. The alternative argument the district court didn't reach, but the other side did make, so they're entitled to make it here, is a statutory argument. That is, that even if the American family didn't agree to pay this, it had to. Minnesota law and the fire insurance statute said they had to. That's the argument. There are a couple of problems with that. This wasn't a fire case, so the fire statute doesn't have any application. That's really the beginning and end of that. We quoted this in our reply brief at page 7. The fire statute expressly says what happens when you have a multi-parole insurance policy like this where it would cover both It says in there, and I'm reading here, it says that the minimum requirements apply only to, quote, with respect to the peril of fire. Again, it's really clear in the statute that whatever minimums apply with respect to fire coverage, when that's applied to a multi-parole policy, those minimums apply only when it's a fire. This wasn't a fire, it was rain and hail. That's not the peril. It's not the peril. There isn't any basis for saying that Minnesota statute would override what they actually agreed to and make them do something else. Do you know the case of Henning against Fireman Fund, Minnesota case? I'm not familiar with it, Your Honor. 383 Northwest 2nd, 645. I believe it holds exactly what you're arguing. I would have loved to have cited it then, Your Honor. It's not too late. Well, I can go. It seems that Your Honor has put it on the record, but I'll take your word for it. Well, you might want to consider filing a 28-J letter or something. Perhaps you won't agree with my reading. When we were looking for this, this court flagged this issue a few years ago but didn't decide it. That was the Fire Bureau case. Yeah, we said it hadn't been decided. I think it has, but I might be wrong. We just found other unpublished things that we didn't think were appropriate to cite that support our view, but we think the answer is pretty clear. I'm happy to answer any other questions Your Honors have on opening. Otherwise, I'll address any points on rebuttal. Thank you. Mr. Beckman. Thank you. Good morning, Your Honors. May it please the Court, my name is Ed Beckman and I represent Dr. Noonan and Mrs. Noonan for this matter. With respect to the interpretation of the insurance policy, I'd like to handle that first as counsel handled it first. Our view of the plain text of this matter is that the matching endorsement, that section that speaks to matching does not specifically reference the Gold Star Amendment, unlike other sections of the policy of the Minnesota endorsement, which do indeed specifically reference the Gold Star Amendment. So in the briefing, American Family takes a draconian view that our position is that the Minnesota endorsement never applies. It does apply from time to time. And in our brief, we put in blue highlights instances where the Minnesota endorsement does indeed specifically reference the Gold Star Amendment and therefore applies. But in this matter, we have a very specific reference in the Minnesota endorsement about when the matching clause where it applies, it does not apply to the Gold Star Amendment by its very terms. And that's in the yellow highlights that we put in our brief. Because it does not apply to the Gold Star Amendment, it is a nullity to this case. And that is the essence of our argument. The District Court also said that at a minimum, this is ambiguous. And I would also agree that any ambiguity in this regard is resolved in our favor. But when we look at the text of the matching clause, it needs to say that it applies to the Gold Star Amendment. Because the Gold Star Amendment makes the loss valuation clause in the original Gold Star form a nullity. It begins by saying we delete and remove the loss valuation clause in the Gold Star form in its entirety. And indeed it does. So the Gold Star form, insofar as that paragraph 11, the loss value determination, is a nullity. It's only the Gold Star Amendment. So that had to have been specifically amended or revoked or added to in the Minnesota endorsement and it does not. With respect to the statutory argument, I asked the court to refer to 65A01 Subdivision 1. That states when the duty to conform the policy language to statute is triggered. So there is 65A01 Subdivision 3. That's important. It's form language. But under 65A01 Subdivision 1, that's when the duty to create a policy with these minimum protections is triggered. And it is triggered when an insurance company issues a policy that encompasses or includes fire under one premium. And that is the case here. Newtons were paying one premium for an all peril policy, as we say in the insurance world. It's an all peril policy. It includes fire. So when that policy was issued, there was a statutory obligation to make sure that these minimum provisions in Subdivision 3 are met. Now 65A01 Subdivision 1 also says you don't need the exact language but it has to conform to these minimum requirements. And the matching clause that American Family is trying to enforce would not meet those minimum requirements found in Subdivision 3 of the statute. Because in Subdivision 3 of the statute, it says the way you value a loss or damage. The way you value loss or damage is very clear and you do both. Not just damage. You value loss as well. That is a minimum protection if the policy is going to encompass fire. The Minnesota endorsement with respect to matching does purportedly cover fire. This might be different if that section was specifically applied to just fire or didn't. But the point is it does apply to all perils including fire. So it's got to look like what this statute requires. And if not, the courts reform it to meet those statutory minimums. So Watson v. USAA is an example of the Minnesota courts reforming an insurance policy to meet the statutory minimums. I'd also refer the court to Quade v. Secura where that arises out of a wind loss. And that is where the court, the Minnesota Supreme Court specifically applied 65A01 to that all peril policy. Because I think for the reason that it encompasses fire. The issue is not what the loss was. The issue is whether the policy encompasses fire. And if it does, that's when the statutory obligation is triggered. And it was indeed triggered in this case. So to address a point earlier from the court, I would say that in terms of application of 65A01 subdivision 3 and 1, has it ever applied outside a fire loss, I would point the court to Quade v. Secura which arises out of windstorm. Where there was an application of it because the policy encompassed fire. And then I would also refer the court to 65A01 subdivision 1. And so we have to have coverage of both a loss or and damage. Because the law would never assume that this legislature wrote a redundant statute. Those have to have different meanings. And by the way, when we have undefined words, common usage applies under Minnesota law. And a loss is different from damage. It can be the demunition and value of something, whereas damage is physical damage. I would add to that, by the way, we have the Cedar Bluff case in Minnesota where an American family took the issue to appellate court. The appellate court said damage also includes demunition and value. But in any event, I'm here today to appeal to this court that there is loss and damage. The legislature intentionally wrote both. There has to be a valuation of both. And on that point, when we look at the Minnesota endorsement, is it an exclusion or is it a valuation clause? Of course if it's either, my position would be they're strictly construed against an insurance company as certainly exclusions are strictly construed. But when we look at that valuation clause the clause itself of the matching endorsement, the very last sentence specifically talks about how we're going to value the loss. The word value is in there. It is a valuation clause because that's what it says. It does not say this is an exclusion. I know counsel has said this would be perhaps exclusions 20 or 21, but that's defeated by the text of it which refers to a value, refers to a valuation. And so the state legislature has said that when you've got a policy that covers fire, this is how it is to be valued. An American family does not have the prerogative to negate that. But that is what it is purporting to do because 65A01 subdivision 3 clearly has a valuation provision in it and no insurance company may negate it. But that is what exactly what they are trying to do. I ask the court to reject that. With respect to another issue in the briefing, I'll keep this short it was not argued by counsel this morning, but we are entitled to full RCV coverage just as the district court said because for this reason we have an appraisal clause which is I believe in appendix 23 and then in the next page we see a loss payment clause and then we see the loss value determination clause that are on successive pages. And the appraisal clause says the appraisal panel will decide the amount of loss with finality, which is what the statute requires. Then there's the loss payment provision which says payment is to be issued in five days. The district court correctly held that when you read that, that says when you have an appraisal award, that triggers an obligation to pay within five days. Pay everything within five days. The district court was right to say the duty was triggered to pay within five days after that appraisal award. So I ask the court to affirm the district court in that regard and to please have full payment for the RCV damaged, at least characterized as undamaged as it appears in the appraisal award because clearly the appraisal award refers to this is a matching case that some slopes were not specifically damaged but they held that if you're going to have a slight tile roof, it's got to be there will be a loss if there isn't full payment for all the slopes and we ask the court to enforce that Unless there are any other questions to the court, I will yield my time and thank you for your consideration. Thank you very much. How much time does Mr. Van Oort have remaining? Five minutes, fifty seconds, Your Honor. What are you going to do with all that time? I will not use it all, Your Honor. On the interpretive issue, counsel repeated the argument that this had to refer to the cold star endorsement but he never explained why and specifically he never responded to the point that it didn't need to modify that because it didn't apply to the loss value determination provision, it added a new one. So that argument is clear. Regarding the statute, the statutory language says that the mandatory minimums for fire apply in a multi-parole policy only with respect to the peril of fire, which seems clear. The Quaid decision from the Minnesota Supreme Court does not hold otherwise. It never holds that the mandatory minimums apply to something else. At issue in Quaid was the appraisal process. That was a storm case but as Quaid pointed out the statute specifically governing storm damage requires an appraisal. That's 65A26. That's what we pointed out actually applies here. That doesn't have the minimums but it did have an appraisal so Quaid does not stand for the proposition that my opposition said. And then the Cedar Bluff case interpreted a different American family policy that did not have the matching exclusion and so it provides no help at all in the interpretive issue. I have nothing else to offer unless your honors have questions. Thank you your honors. Thank you very much counsel for your presentations and the cases submitted. Does that conclude our calendar for this morning? It does your honors. Very well. We'll be in recess until 9 o'clock tomorrow morning.